JOHN H. CANNON et al, *v.* JOHN JANVIER JR. et al.

In a petition for a writ of *mandamus* there is no principle of law or rule of practice which requires that any one or more of the parties interested in or to be benefited by the application, should make the affidavit upon which it is founded, although any one of them may make it, if he is prepared to do so, and, of course, any other person not interested and otherwise competent, may also make it.

THIS was a petition on behalf of John H. Cannon, James C. Matthews, William Polk, John Houston, Leonard C. Vandegrift, John W. Enos and Wilson E. Vandegrift, against John Janvier Jr., Jesse Higgins, Isaac M. Vandegrift, James J. Janvier and James C. Matthews, and a rule thereupon granted to show cause wherefore a writ of *mandamus* should not be awarded against the latter for the object and on the grounds set forth in the petition, which were as follows: That the petitioners were members of a religious society and congregation duly incorporated and known by the name of "The First Presbyterian Church in St. Georges Hundred, New Castle County and State of Delaware," and which was organized into and became incorporated as a body politic and corporate on the 18th day of June A. D. 1788, in accordance with the provisions of the act of the General Assembly, passed February 3d, A. D. 1777, entitled " An Act to enable all the religious denominations in this State to appoint trustees who shall be a body corporate for the purpose of taking care of the temporalities of their respective congregations ;" and from the said 18th day of June, 1788, the said corporation had maintained and continued its existence as a body politic and corporate pursuant to the laws of the State in that behalf enacted. That the board of trustees of the church being composed of seven in number, three vacancies occurred in it in the month of October 1860, the remaining four being John H. Cannon, Abraham Vandegrift, Charles T. Polk and Jesse Higgins, when Isaac W. Vandegrift, James J. Janvier and James C. Matthews were duly elected to fill the vacancies at a meeting of the congregation held for the purpose, but in the fall of 1861, the said John H. Cannon and Abraham Vandegrift resigned and in a few months afterward, at a meeting of the congregation called for the purpose, John Janvier Jr. and Jacob Vandegrift were elected to fill the vacancies caused by their resignation. That during the summer of 1862 the said Jacob Vandegrift resigned the office of trustee, and in the spring of 1863 the said Charles T. Polk died, and the two vacancies which

thus occurred in the board were not afterward filled by election until the election of the petitioners as herein after stated. That whilst the temporalities of the said church thus remained in the hands of the said five trustees, John Janvier Jr., Jesse Higgins, Isaac W. Vandegrift, James J. Janvier and James W. Matthews, and more especially during the six months last past, the opinion had grown general among the congregation and members of the church, that the interests of it would be advanced and promoted by the election of a new board of trustees, in the place of those last above named, and to fill vacancies existing in it, and that opinion and desire on the part of the congregation was at divers times made known by members to the said surviving trustees individually, who nevertheless, with the single exception of the said James C. Matthews, would not assent thereto, but on the contrary, refused to call such a meeting of the congregation for the election of a new board of trustees. That afterward, on the 19th of April 1864, twenty-seven of the members and lawfully qualified voters of the church signed and delivered a written request to James C. Matthews, one of the said surviving trustees, that he would in behalf of the members call a meeting of the congregation for the purpose of holding an election of trustees as aforesaid; and that in accordance with the request and the provisions of *section* 2 of *chapter* 39 of the *Revised Statutes of the State*, two written notices of the meeting were duly and publicly posted on the front door of the church in the town of Odessa on the day and year last mentioned, which remained so posted until after the said meeting had concluded its business on the 30th of the said month. That in accordance with the terms thereof a large number of the members of the congregation assembled at the church at 3 o'clock A. M. on the day last mentioned, but were unable to obtain admission into it, by reason of the doors being locked and the keys withheld by order of the said surviving trustees, which order was made by a resolution by them adopted at a meeting held for the purpose, denying the use of the

church to the congregation for the purpose of holding their meeting as aforesaid, the said James C. Matthews voting alone in opposition to such resolution. The members of the congregation present, however, without obtaining admission into the church, thereupon proceeded to organize their meeting and to hold an election for a new board of trustees in accordance with the notices and the customary laws and regulations of the said corporation and society, which being duly held by ballot, resulted in the election of the petitioners as the trustees of the said church by a unanimous vote of the twenty-four voters present and duly qualified to vote for trustees thereof. Afterward on the same day, the latter held a meeting and appointed a committee consisting of three of their number, to wait upon John Janvier Jr., chairman of the late Board of Trustees, to obtain from him the books and keys of the church, which by virtue of his office he had in his custody and control, and to the possession of which the petitioners, trustees as aforesaid, were justly and lawfully entitled, which they did on the 2nd day of May following, and after exhibiting to him a certificate of the election of the new board of trustees and a copy of the proceedings of the meeting of such board, demanded of him the books and keys of the church, to which he replied after reading them, that he would not deliver them and would not recognize them as trustees of the church. That afterward on the 9th of the same month, they caused written notices of demand for the books and keys of the church to be served upon each of the said late trustees, but that the said John Janvier Jr., Jesse Higgins, Isaac W. Vandegrift and James J. Janvier, four of them, had utterly neglected and refused, and still continued to neglect and refuse to deliver them, notwithstanding the said James C. Matthews was willing, and desired to do so. Wherefore the prayer was for a rule upon them to show cause why a writ of *mandamus* should not issue against them to compel the delivery of the books, keys and other property of the church to them. To the petition was annexed the affidavit of James C.

Matthews alone, that the facts stated in it were true.

*G. B. Rodney*, for the respondents. If the court should be of opinion on the facts stated in the petition that the complainants were entitled to a *mandamus* in such a case, there was a question preliminary to it, which he desired to present for their consideration, and that was whether the affidavit of one of the petitioners alone, all of whom had signed the petition, however, was sufficient to warrant the rule founded upon it, and which had been granted by the court on their application. That he apprehended was insufficient, for the petition should have been based upon and should be sustained by the affidavit of each and all of the signers to it. *Ang. & Ames on Corp. sec.* 98. *Wilk. on Corp.* 14 *Law Libr.* 193.

*T. F. Bayard*, for the petitioners. It was not necessary that the affidavit for that purpose should have been signed by all, or even any one of the petitioners, for it would have been quite sufficient if it had been made by any other credible person.

*By the court.* The writ of *mandamus* is a prerogative writ, as it is termed in the law, by which the Court of King's Bench in England exercises its supreme jurisdiction over public bodies and officers in the administration of justice in cases, in which the law has provided no adequate or specific remedy, to prevent a failure of justice, and has been peculiarly applied to the regulation of corporations for the purpose of compelling them to observe the ordinances of their constitution and to perform their specific duties and to respect the rights of those who are entitled to participate in their privileges. *Wilk. on Mun. Corp.* 14 *Law. Libr.* 193. But the writ of *mandamus* not being a writ of right, can only be granted like other writs of this kind, such as the writ of *habeas corpus* for instance, on special application by petition stating such facts as may *prima facie* entitle them to the writ and to the interposition

of the court for the remedy and relief sought under the facts and circumstances, and this statement and presentation of the facts on which the application for it is founded, must be accompanied with and sustained by the affidavit of one or more credible witnesses competent to testify to the truth of them. But we are not aware of any principle of law or rule of practice, either here or in England, which requires that any one or more of the parties interested in or to be benefited by the application, should make the affidavit upon which it is founded, although any one of them may make it, if he is prepared to do so, and, of course, any other person not interested and otherwise competent, may also make it.

Rule made absolute and an alternative writ of *mandamus* awarded.